

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-21-00040-CV

---

KIRBY, MATHEWS & WALRATH, PLLC AND GERALD WALRATH, Appellants

V.

KUIPER LAW FIRM, PLLC, Appellee

---

On Appeal from the 133rd District Court
Harris County, Texas
Trial Court No. 2020-76455

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

Kuiper Law Firm, PLLC (Kuiper), sued Kirby, Mathews & Walrath, PLLC (KMW), and Gerald Walrath (Walrath) (collectively Appellants) and asserted that Appellants had tortiously interfered with Kuiper's contract with a third-party client and with its prospective business relations with that same client when Walrath allegedly transmitted false, misleading, harmful, and outrageous accusations about Kuiper to its client. Simultaneously with filing their original answers, Appellants filed a motion to dismiss Kuiper's claims pursuant to the Texas Citizen's Participation Act (TCPA).[1] After a hearing, the trial court denied the motion.

On appeal,[2] Appellants complain that the trial court erred in denying their motion to dismiss. Because we find that Appellants did not demonstrate that Kuiper's claims were based on or in response to the exercise of their right to free speech,[3] we affirm the trial court's order.

## I.  Background

In November 2020, Kuiper filed suit against KMW and Walrath, a named partner and co-founder of KMW. Kuiper averred that it had a contractual business relationship with a third party (Third Party) that had generated two million dollars per year in profits and that this relationship was anticipated to last for at least five years. Kuiper alleged that Appellants were

---

[1]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003.

[2]Originally appealed to the First Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the First Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[3]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1)(a) (Supp.). The Texas Legislature amended certain provisions of the TCPA in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, § 12, secs. 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010, 2019 Tex. Sess. Law Serv. 684–87. The amendments became effective September 1, 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11–12, 2019 Tex. Sess. Law Serv. 687. Because this suit was filed after the effective date of the amendments, this case is governed by the current statute.

direct competitors with it in the oil and gas law industry and that they knew that Kuiper had a contractual or business relationship with Third Party.

According to Kuiper's pleadings, in or around August 2019, Walrath, acting for himself and KMW, transmitted false, misleading, harmful, and outrageous accusations about Kuiper to Third Party that cast Kuiper in a negative light and which Appellants knew or should have known would impact Kuiper's relationship with Third Party. Kuiper alleged that there was no legitimate purpose for the transmittal of the information and that Appellants transmitted the information with the deliberate intent to sabotage Kuiper's relationship with Third Party and to gain Third Party's business for themselves or others. Kuiper also alleged that Appellants did nothing to confirm the veracity of the transmitted information and that, as a result of Appellants' actions, Kuiper's relationship with Third Party was disrupted and irreparably ended.

Based on these allegations, Kuiper asserted common-law actions against Appellants for tortious interference with contract and tortious interference with prospective business relationships. Kuiper requested both actual and exemplary damages.

Appellants answered and asserted general denials as well as affirmative defenses based on limitations, truth, judicial estoppel, privilege, and attorney-client privilege. They also filed a motion to dismiss pursuant to the TCPA and alleged that Kuiper's claims should be dismissed because (1) they related to, and were in response to, the exercise of free speech; (2) Kuiper could not establish a prima facie case of each essential element of its claims; and (3) Appellants could establish their affirmative defenses based on truth and limitations. After the trial court granted limited discovery, Kuiper filed its response to the motion to dismiss and attached (1) the

3

Declaration of Alexander A. Kuiper (Alexander Kuiper), (2) a copy of an engagement letter between Kuiper and Third Party, (3) a confidential release between Alexander Kuiper and Kuiper, on the one hand, and Third Party and Gregory Cameron Cox, on the other, (4) the affidavit of Cox, (5) copies of email and text communications between Cox and Walrath, and (6) excerpts from the deposition of Gregory C. Cox.

As relevant to this opinion, these documents showed that, in July 2019, Kuiper had entered into an engagement letter to provide oil and gas legal services to Third Party, an upstream oil and gas company, and that Kuiper provided legal services to Third Party for approximately one year pursuant to that agreement. In addition, the documents and Cox's deposition showed that, in August 2019, Cox, who was a senior counsel at Third Party, and Walrath had electronic communications concerning the then-recent break-up of Alexander Kuiper's former firm and rumors regarding alleged unethical conduct by Alexander Kuiper when he represented another oil and gas company. These communications culminated when Walrath related a story to Cox at a lunch meeting that provided more detail regarding the alleged unethical conduct by Alexander Kuiper during his representation of another oil and gas company. Cox's deposition also showed that Cox's relationship with Walrath began in 2006, when Cox was a law clerk at a law firm where Walrath worked as a lawyer. They worked together again beginning in 2017 when Third Party engaged Walrath's legal services. Cox testified that he considered Walrath his friend and mentor.[4] The evidence also showed that, in

---

[4]Walrath and KMW filed a reply on the evening before the hearing on its motion to dismiss and attached a copy of Cox's entire deposition and affidavits from two witnesses. At and before the hearing, Kuiper objected to this evidence as untimely. On appeal, Kuiper argues that, in deciding a TCPA motion, the only evidence the court should consider is "evidence a court could consider under Rule 166a." TEX. CIV. PRAC. & REM. CODE ANN.

4

May 2020, Cox sent an email to another senior counsel for Third Party in which he relayed the accusations and other information regarding Alexander Kuiper and stated that he would never use him to perform work for Third Party.

At the hearing on Appellants' motion to dismiss, the trial court heard the arguments of counsel, then denied the motion. Several days later, the trial court signed an order denying the motion. Neither the trial court's oral ruling nor its signed order indicated the basis of its denial.

## II.   The TCPA

"The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 469 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (citing *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding)). The TCPA is "construed liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b). The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Gaskamp*, 596 S.W.3d at 469 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.002).

"A motion to dismiss made under the [TCPA] generally entails a three-step analysis." *Morris v. Daniel*, 615 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing

§ 27.006(a). It reasons that, because new evidence submitted with a summary judgment reply should not be considered, citing *Environmental Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 619–20 (Tex. App.—Houston [14th Dist.] 2009, pet. denied), neither should it be considered in an appeal of a ruling on a TCPA motion to dismiss. In their reply brief on appeal, Appellants argue that, unlike Rule 166a, the TCPA does not address when evidence is required to be filed. *Compare* TEX. R. CIV. P. 166a(c), *with* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(d)–(e), 27.006(a)–(b). We need not resolve this issue, however, because the evidence proffered by Appellants with their reply brief does not affect the outcome of this appeal.

5

*Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018)). "The movant first must demonstrate that the nonmovant's legal action is based on or is in response to the movant's exercise of the right of free speech, right to petition, or right of association." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1)). "The nonmovant's pleading is the best evidence of the nature of his legal action." *Id.* (citing *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)). "When it is clear from the nonmovant's pleading that his legal action is covered by the [TCPA], the movant need not show more to demonstrate that the [TCPA] applies." *Id.* (citing *Adams v. Starside Custom Builders*, 547 S.W.3d 890, 897 (Tex. 2018)).

Appellants contend that Kuiper's claims are based on or in response to its exercise of free speech. Under the TCPA, "'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "[m]atter of public concern" is defined as

[A] statement or activity regarding:

    (A)    a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

    (B)    a matter of political, social, or other interest to the community; or

    (C)    a subject of concern to the public.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7).

"Taken together, these three provisions broadly define what constitutes a matter of public concern." *Morris*, 615 S.W.3d at 576 (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) ("characterizing prior version of Act as broadly defining exercise of

right of free speech")). "But the reach of these broad provisions is not without limit. To be a matter of public concern, a claim must have public relevance beyond the interests of the parties." *Id.* (citing *Creative Oil & Gas v. Lona Hills Ranch*, 591 S.W.3d 127, 136 (Tex. 2019)). "Private disputes, whether sounding in contract or in tort, that merely affect the fortunes of the litigants are not matters of public concern." *Id.* (citing *Creative Oil & Gas*, 591 S.W.3d at 134–37). For instance, under the broader definition of "matter of public concern" contained in the prior version of the TCPA,[5] the Texas Supreme Court held that communications that involved a contract dispute about a purely private matter impacting the pecuniary interests of the parties were not matters of public concern under the TCPA even though they related to a good, product, or service. *Creative Oil & Gas v. Lona Hills Ranch*, 591 S.W.3d 127, 134–37 (Tex. 2019). Also, in *Gaskamp*, the First Court of Appeals held that, under the prior version of the TCPA, communications between the defendants through which they allegedly misappropriated, shared, and used the plaintiff's trade secrets, breached their fiduciary duties, and conspired to further their business venture were not matters of public concern since "the communications had no

---

[5]Under the prior version of the TCPA, a "[m]atter of public concern" was defined as:

an issue related to:

(A)     health or safety;

(B)     environmental, economic, or community well-being;

(C)     the government;

(D)     a public official or public figure; or

(E)     a good, product, or service in the marketplace.

*See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 1, sec. 27.001, 2019 Tex. Sess. Law Serv. 684–85.

7

public relevance beyond the pecuniary interests of the private parties." *Gaskamp*, 596 S.W.3d at 477 (citing *Creative Oil & Gas*, 591 S.W.3d at 136). Moreover, the First Court of Appeals has also noted that "the current definition of a 'matter of public concern' more strongly emphasizes the term's public component and thereby furthers the TCPA's stated and unchanged purpose: 'to encourage and safeguard the *constitutional rights* of persons to . . . speak freely." *Chesser v. Aucoin*, No. 01-20-00425-CV, 2020 WL 7391711, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 17, 2020, no pet.) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.002)) (emphasis added).

"If the movant carries [its] initial burden, the trial court must dismiss the nonmovant's legal action unless the nonmovant either establishes that [its] action is exempt from the [TCPA] or establishes by clear and specific evidence a prima facie case for each essential element of the challenged claims." *Morris*, 615 S.W.3d at 577 (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(c), 27.010). "Finally, if the nonmovant makes a prima facie case in support of the challenged claims, the burden shifts back to the movant to establish an affirmative defense or other grounds entitling [it] to judgment as a matter of law. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *Youngkin*, 546 S.W.3d at 679–80). "If the movant does so, the trial court must dismiss the action." *Id.* (citing *Youngkin*, 546 S.W.3d at 681).

### III.    Standard of Review

A trial court's denial of a motion to dismiss under the TCPA is reviewed de novo. *Id.* at 575. "We likewise interpret the [TCPA] and decide whether it applies to a legal action de novo." *Id.* (citing *Youngkin*, 546 S.W.3d at 680). In addition, whether communications are matters of

8

public concern is determined under a de novo standard of review. *Creative Oil & Gas*, 591 S.W.3d at 132 (citing *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018)).

## IV.    Analysis

In its petition, Kuiper alleged that it had an ongoing relationship with Third Party in which it provided oil and gas legal services to Third Party. The petition also alleged that Appellants were its direct competitors in the oil and gas law industry and that Walrath made false, misleading, harmful, and outrageous accusations about Kuiper to Third Party in an attempt to gain Third Party's business for themselves. The petition went on to assert common-law actions against Appellants for tortious interference with contract and tortious interference with prospective business relationships. The evidence before the trial court was that Appellants also provided legal services to Third Party, that Walrath and Cox had a long-established friendship, and that the accusations communicated by Walrath to his friend concerned alleged unethical conduct by Alexander Kuiper during his prior representation of another oil and gas company.

In *Creative Oil & Gas*, Lona Hills Ranch, LLC (Lona Hills), had entered an oil and gas lease with Creative Oil & Gas, LLC (Creative). Lona Hills sued Creative and sought a ruling that the lease was terminated due to a cessation of production. Creative filed a counterclaim and contended that Lona Hills falsely communicated to third-party purchasers of production from the lease that the lease had expired and that payments should stop. *Id.* at 130. Lona Hills filed a motion to dismiss the counterclaim and argued that its statements to third parties were an exercise of the right of free speech, because they were communications made in connection with

9

a matter of public concern. *Id.* The trial court denied the motion, but the court of appeals reversed without addressing the "matter of public concern" issue. *Id.* at 130–31.

On appeal, the Texas Supreme Court opined that "[t]he phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Id.* at 135 (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)[6] (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)))). In examining the context in which the communications were made, the court noted that they were "private business communications to third-party purchasers of a single well's production" and that there was no evidence "that the dispute had any relevance to the broader marketplace or otherwise could reasonably be characterized as involving public concerns" but, rather, that "the alleged communications were made to two private parties concerning modest production at a single well." *Id.* at 136. For that reason, the court held that the "communications, with a limited business audience concerning a private contract dispute, [did] not relate to a matter of public concern under the TCPA." *Id.* It further explained,

> [N]ot every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern. A private contract dispute affecting only the fortunes of the private parties involved is simply not a "matter of public concern" under any tenable understanding of those words.

---

[6]In *Brady*, the court went on to explain that "[p]ublic matters include 'a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (quoting *Snyder*, 562 U.S. at 453 (quoting *San Diego v. Roe*, 543 U.S. 77, 83–84 (2004) (per curiam))). "Whether 'speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record.'" *Id.* (alteration in original) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985) (plurality op.) (quoting *Connick*, 461 U.S. at 147–48)).

*Id.* at 137;[7] *see also Gaskamp*, 596 S.W.3d at 476–77 (applying the reasoning in *Creative Oil & Gas* to hold that communications between the defendants through which they allegedly misappropriated, shared, and used the plaintiff's trade secrets, breached their fiduciary duties, and conspired to further their business venture were not matters of public concern).

Similarly, in this case, the communications by Walrath were made privately to his friend Cox, who also was a senior counsel for Third Party and with whom both Kuiper and Appellants had business relationships. According to Kuiper's allegations, those communications were made with the intent to, and did, damage its business relationship with Third Party. There is no allegation, and no evidence in the record, that the communications were made to any of Kuiper's other clients or that the alleged unethical conduct of Kuiper was the subject of an ethics complaint or investigation or of a lawsuit against Kuiper by the allegedly aggrieved client. To the contrary, the communications were made by one service provider to a client regarding a competitor for the client's business, allegedly resulting in the competitor's loss of the client's business. Unlike those cases in which the Texas Supreme Court has held that a private communication was covered by the TCPA, there was no evidence that Alexander Kuiper's alleged conduct had any "public relevance beyond the pecuniary interests of the private parties involved." *Creative Oil & Gas*, 591 S.W.3d at 136. For these reasons, we find that the communications do not relate to a matter of public concern under the TCPA. *See id.* at 136–37; *Gaskamp*, 596 S.W.3d at 476–77.

---

[7]The court noted that it had "previously held that private communications are sometimes covered by the TCPA." *Creative Oil & Gas*, 591 S.W.3d at 136 (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895 (Tex. 2017) (per curiam); *Lippincott*, 462 S.W.3d 507). The court distinguished those cases because they "involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved." *Id.*

11

Nevertheless, relying principally on a Corpus Christi Court of Appeals opinion, Appellants argue that "the practice of law . . . and disciplinary proceedings brought in Texas against a lawyer by the Supreme Court of Texas" are "undoubtedly matters of public concern." *Trevino v. Cantu*, Nos. 13-16-00109-CV & 13-16-00111-CV, 2017 WL 1056404, at \*3 (Tex. App.—Corpus Christi Feb. 2, 2017, no pet.) (mem. op.). We do not read *Trevino* as standing for the proposition that an attorney's practice of law and all rumors regarding an attorney's possible violation of disciplinary rules are in all instances "matters of public concern." Rather, the Corpus Christi court's statement must be read in the context of that case.

In *Trevino*, the *McAllen Monitor* and a related newspaper published two articles concerning Mark A. Cantu, a McAllen attorney. In the first article, the Monitor reported on a case in which Cantu represented a family against Ford Motor Company following a rollover accident and its appeal to the Texas Supreme Court. *Id.* at \*1. The article stated that "the court found evidence that McAllen lawyer Mark A. Cantu had been in collusion with a juror to maneuver the $3 million settlement from Ford, during a 2004 jury trial in the 404th state District Court presided over by former Judge Abel C. Limas." *Id.* The article also stated that an administrator from the State Bar of Texas's Office of Chief Disciplinary Counsel had no comment regarding whether the office was investigating Cantu related to the *Ford* case. A second article concerned Cantu's history of disciplinary concerns, quoted from a bankruptcy judge's opinion in which the judge requested that the State Bar of Texas investigate Cantu, and outlined Cantu's disciplinary history with the state bar. *Id.*

12

Thereafter, Cantu sued the Monitor, its associated newspaper, and its reporter seeking damages for defamation, business disparagement, and intentional infliction of emotional distress. *Id.* The defendants filed a motion to dismiss pursuant to the TCPA and asserted that Cantu's claims related to their reporting on an issue of public concern, i.e., Cantu's conduct as an officer of Texas courts. The motion was denied by operation of law. *Id.* at *2.

On appeal, the court of appeals concluded, without analysis, "that both articles at issue in [the] case [were] matters of public concern because they concern[ed] the practice of law, public corruption, cases filed in our judicial system, and disciplinary proceedings brought in Texas against a lawyer licensed by the Supreme Court of Texas." *Id.* at *3. The facts of the case, however, supported the appellate court's conclusion: the local McAllen newspaper reported on unethical conduct by a McAllen attorney in a local district court as reported by the Texas Supreme Court, on the reported concerns of a bankruptcy judge regarding the conduct of the same attorney, and on the published disciplinary history of that attorney with the State Bar. Those would be matters of concern to the citizens of McAllen and the surrounding communities (to whom the communications were made) since they concerned the integrity of their courts and the established unethical conduct of one of the attorneys practicing before those courts and in their community.

By contrast, here, there is no evidence that a disciplinary complaint was filed regarding the alleged conduct of Alexander Kuiper, much less a final determination by the state bar's grievance committee. There is no evidence that Alexander Kuiper has any adverse disciplinary history with the State Bar. There is also no evidence that Alexander Kuiper's former client filed

13

suit against him alleging any wrongdoing on his part. Additionally, as we have previously noted, the communications in this case were made by one service provider to a client regarding a competitor for the client's business, allegedly resulting in the competitor's loss of the client's business. But there was no evidence of any public relevance beyond the pecuniary interests of the parties.[8]

Since the communications were not a matter of public concern, Appellants failed to demonstrate that Kuiper's claims were based on or were in response to their exercise of the right of free speech. As a result, we find that the trial court did not err in denying Appellants' motion to dismiss because the TCPA does not apply to Kuiper's claims.[9] *See Morris*, 615 S.W.3d at 579.

---

[8]In their brief on appeal, Appellants also point to certain paragraphs of the preamble to the Texas Disciplinary Rules of Professional Conduct and a portion of the Texas Lawyer's Creed in support of their argument that the communication was a matter of public concern. However, Appellants do not explain how those portions of the preamble and creed elevate this private dispute affecting only the parties involved to a matter of public concern. Under our rules, an appellant's brief is required to "contain an argument that provides 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Tate v. Meisterwood Cmty. Improvement Ass'n*, No. 01-19-00054-CV, 2020 WL 4689207, at *1 (Tex. App.—Houston [1st Dist.] Aug. 13, 2020, no pet.) (mem. op.) (quoting TEX. R. APP. P. 38.1(i)). "This court is not obliged to independently review the record, research the law, and make arguments on an appellant's behalf when [it] fails to do so." *Id.* (quoting *Eagle Oil & Gas Co. v. Shale Expl. LLC*, 549 S.W.3d 256, 286 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd)).

[9]Because Appellants failed to demonstrate that Kuiper's claims were based on or were in response to their exercise of free speech, we need not address whether Kuiper established by clear and specific evidence a prima facie case for each essential element of its claims or whether Appellants established an affirmative defense as a matter of law. *See Morris*, 615 S.W.3d at 579.

## V.     Conclusion

For the reasons stated, we affirm the trial court's order denying Appellants' motion to dismiss.

Scott E. Stevens
Justice

Date Submitted:     July 20, 2021
Date Decided:      September 21, 2021